BRYAN SELLS
LAUGHLIN MCDONALD
American Civil Liberties Union Foundation, Inc.
2600 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303
(404) 523-2721
(404) 653-0331 (fax)
bsells@aclu.org
lmcdonald@aclu.org

ELIZABETH L. GRIFFING
American Civil Liberties Union
     of Montana Foundation, Inc.
241 E. Alder, Ste. B
P.O. Box 9138
Missoula, MT 59802
(406) 830-3009
betsyg@aclumontana.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| STEVE KELLY and CLARICE DREYER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. CV-08-25-BU-SEH |
| BRAD JOHNSON, in his official ) | |
| capacity as Secretary of State of the ) | |
| State of Montana, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY TO THE DEFENDANT'S BRIEF IN OPPOSITION
TO THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

The plaintiffs respectfully submit this reply to the defendant's brief in opposition to the plaintiffs' motion for a preliminary injunction. ("Defendant's Brief") (doc. no. 28). The defendant's arguments have no merit.

## I. The plaintiffs have standing.

The defendant first argues that the plaintiffs don't have standing to bring this case because Kelly didn't submit enough signatures. (Defendant's Brief 4-7.) Specifically, he argues that Kelly would only have standing to challenge Montana's existing ballot-access scheme if he had submitted enough signatures to qualify for the ballot under the scheme as it existed before the Legislature last amended it. (*Id.* at 6-7.)

It is now well established that a would-be candidate need not submit *any* petition signatures before he or she has standing to challenge a state's ballot-access laws. *Nader v. Keith,* 385 F.3d 729, 735 (7th Cir. 2004) (Posner, J.) ( "There would be no question of [the candidate's] standing to seek [an injunction placing his name on the ballot] in advance of the submission or even collection of any petitions."); *Texas Indep. Party v. Kirk,* 84 F.3d 178, 187 (5th Cir. 1996) (independent candidate for Senate had standing to challenge ballot-access statute even though he had not submitted any petitions); *Stevenson v. State Bd. of Elections,* 638 F. Supp. 547, 549 (N.D. Ill.) (failure to

2

tender petition and have it rejected does not deprive candidate of standing), *aff'd,* 794 F.2d 1176 (7th Cir. 1986); *Libertarian Party v. Ehrler,* 776 F. Supp. 1200, 1202-03 (E.D. Ky. 1991) (reviewing relevant cases); *Anderson v. Hooper,* 498 F. Supp. 898, 901-02 (D.N.M.1980) (independent candidate had standing to challenge ballot-access statutes even though he had failed to submit any petitions). *See, e.g., McCarthy v. Briscoe,* 429 U.S. 1317, 1319 (1976) (entertaining challenge to ballot-access scheme even though candidate had not submitted any signatures); *Lee v. Kieth,* 463 F.3d 763, 765 (7th Cir. 2006) (same); *Lendall v. Bryant,* 387 F. Supp. 3976, 401(E.D. Ark. 1975) (three-judge district court) (per curiam). *Cf. Sporhase v. Nebraska,* 458 U.S. 941, 944 n.2, (1982) (failure to submit permit application does not deprive plaintiff of standing to challenge permit requirements)*; Nyquist v. Mauclet,* 432 U.S. 1, 6 n.7 (1977) (plaintiff need not have applied for a loan to challenge loan requirements).

It is likewise well established that a voter wishing to support a candidate has standing to challenge ballot-access restrictions that keep the candidate from appearing on the ballot. *Bullock v. Carter,* 405 U.S. 134, 136, 142-44 (1972); *Henderson v. Ft. Worth Indep. Sch. Dist.,* 526 F.2d 286, 288 n.1 (5th Cir. 1976).

The defendant premises his argument on an assertion that Montana's old ballot-access laws would spring back to life if this Court were to enjoin the current law's enforcement. (Defendant's Brief 5-6.) The plaintiffs would only have standing to challenge the current scheme, the argument goes, if they had satisfied the requirements "that would have applied" under the old scheme. (*Id.* at 6.) This is nonsense.

The Supreme Court has rejected this very argument. In *McCarthy v. Briscoe,* both the district court and the court of appeals had "apparently assumed that the only appropriate remedy was to order implementation of the former statutory procedure" for ballot access. 429 U.S. at 1321. Both courts had denied relief because the plaintiff had not yet submitted any signatures and the deadlines set forth in Texas' former procedure had long since past. *Id.* at 1321-22. But the Supreme Court reversed, ruling that the courts had erred in "assuming that a signature-gathering process was the only available remedy" and noting that "the courts were free . . . to order Senator McCarthy's name added to the general election ballot as a remedy." *Id.* at 1322. The fact that McCarthy had neither complied with nor challenged Texas' *former* ballot-access statutes was no bar to his successful challenge.

The plaintiffs in this case could not have challenged Montana's former ballot-access scheme because that scheme was not in effect. Any such

4

challenge would have been unripe. Had the plaintiffs nonetheless tried to comply with the former scheme by submitting petitions by the old deadline, such efforts would have been futile. The Secretary would have been bound by current law to reject those petitions, and "[t]he law does not require the doing of a futile act." *Ohio v. Roberts,* 448 U.S. 56, 74 (1980). The defendant's argument quickly reduces to the absurd: in order to have standing, the plaintiffs must have either challenged or attempted to comply with every former ballot-access scheme going back to Montana's statehood.

In this case, moreover, the legal effect of a ruling in the plaintiffs' case is far from clear. The plaintiffs are not merely challenging the 2007 amendment to Montana's ballot-access scheme but the scheme as a whole, including the deadline, signature requirement, and filing fee. *Wood v. Meadows,* 207 F.3d 708, 711 (4th Cir. 2000) ("a court must examine [a] state's ballot access scheme in its entirety"). A ruling in the plaintiffs' favor would not simply declare one law void *ab initio,* as the defendant suggests (Defendant's Brief 5), but would instead declare the whole scheme unenforceable at least as applied to Steve Kelly. Whether any scheme would stand in its place until the Legislature acts is a much more difficult question than the defendant's brief suggests.

5

At the end of the day, the plaintiffs here plainly satisfy the injury-in-fact, causation, and redressibility requirements to establish Article III standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Kelly is a would be candidate who is unable to appear on the ballot because he could not comply with the cumulative burdens of the state's ballot access scheme. Dreyer is a would-be Kelly voter. And, as the Supreme Court made clear in *Briscoe* and other cases, this Court has the power to redress the plaintiffs' injuries by ordering Kelly's name to be placed on the ballot. The Court also has the power to issue declarative relief that will allow Kelly to get on the ballot in his *next* run for office.

Under these circumstances, the plaintiffs have standing to bring this case.

## II. The defendant has failed to distinguish *Anderson.*

The defendant next offers six reasons to distinguish this case from *Anderson v. Celebrezze,* 460 U.S. 780 (1983). In that case, presidential candidate John Anderson challenged Ohio's ballot-access scheme for independent candidates. Under Ohio's scheme, the filing deadline was March 20 of the election year. 460 U.S. at 783 n.1. Ohio required only 5,000 valid signatures, which is much lower on an absolute and relative basis than Montana's scheme requires. *Id.* And Ohio's filing fee was a mere $100. *See*

*Anderson v. Celebrezze,* 449 F. Supp 121, 141 (D. Ohio 1980), *aff'd* 460 U.S. 780 (1983). The plaintiffs argue that *Anderson* is controlling because the burdens struck down in that case are heavier than those at issue here.

First, the defendant points out that *Anderson* involved a presidential candidate. That's true, but the outcome in *Anderson* didn't depend on that fact, and subsequent cases have routinely applied *Anderson* in nonpresidential contexts. *See Lee v. Kieth,* 463 F.3d 763 (7th Cir. 2006) (deadline 323 days; 10% signature requirement; $0 filing fee); *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876 (3d Cir. 1997) (April 10 deadline; 2% signature requirement; $0 filing fee); *New Alliance Party v. Hand,* 933 F.2d 1568 (11th Cir. 1991) (April 6 deadline; 12,033 signature requirement; $0 filing fee); *Cromer v. South Carolina,* 917 F.2d 819 (4th Cir. 1990) (deadline for filing statement of candidacy 200 days; deadline for filing petitions August 1; 5% signature requirement; $0 filing fee).

Second, the defendant points out that Kelly could run a write-in campaign. (Defendant's Brief 9.) But the Supreme Court expressly rejected this argument in *Anderson.* 460 U.S. at 800 n.26; *see also* Lubin v. Panish, supra, 415 U.S. 709, 719 n.5 (1974).

Third, the defendant notes that Montana law allows a candidate to begin collecting signatures at any time. (Defendant's Brief 9.) Although that's true

7

as a matter of fact, there's nothing in *Anderson* to suggest that Ohio's law was any different or that the Supreme Court relied on that difference.  In fact, the Supreme Court's lengthy discussion of the burdens imposed by an early deadline strongly suggests that being allowed to collect signatures long before the election would in no way lessen those burdens.  460 U.S. at 790-93.

Fourth, the defendant notes that Montana doesn't prevent voters from signing more than one petition.  (Defendant's Brief 10.)  On this, too, there's nothing in *Anderson* to suggest that Ohio's law was any different or that the Supreme Court relied on that difference.

Fifth, the defendant asserts that Montana has a long history of independent and third-party ballot access.  (Defendant's Brief 10.)  The key there is "third-party ballot access."  While Montana has had several *third party* candidates, there has been only one *independent* candidate for U.S. Senator in the State's entire history.  That was in 1936.  There has been only one nonpresidential independent candidate anywhere on the statewide ballot in Montana in at least 35 years, and possibly longer. And, as the Supreme Court has made clear, the third-party route to the ballot is no substitute for independent candidates.  *Storer v. Brown,* 415 U.S. 724, 744-46 (1974).

Sixth, and finally, the defendant notes that Montana held its Republican presidential nominating caucus in February, thus undercutting

8

the Supreme Court's reliance on the fact that Ohio's March deadline came at a time when major-party campaigns had just begun. (Defendant's Brief 10.) The fact that Montana held a caucus in March doesn't mean, however, that the campaign had not just begun. In fact, the presidential nominating process began just a few weeks before Montana's caucus and concluded less than three weeks ago. More importantly, however, the nominating process for U.S. Senate in Montana had just begun in March and didn't conclude until June. In March, for example, it would have been very difficult to predict that Bob Kelleher would be the Republican Party's nominee.

Despite the defendant's best efforts, there's no getting around the fact that Montana's ballot-access scheme for independent candidates is more burdensome on the key measures of deadline, signatures, and filing fee than the scheme struck down in *Anderson.* In fact, Montana's scheme for independent candidates is more burdensome in the aggregate than such any scheme that has ever been upheld.

### III. The defendant has failed to justify the scheme.

Inexplicably, the defendant's brief gives short shrift to the all-important second step of the *Anderson* test. (Defendants' Brief 14-15.) That step requires the Court to: (1) "determine the legitimacy and strength of each of [the state interests asserted to justify the challenged scheme];" and (2) "consider the

9

extent to which those interests make it necessary to burden the [plaintiffs'] rights." *Anderson,* 460 U.S. at 789. The defendant bears the burden of proof on both of these elements. *Burson v. Freeman,* 504 U.S. 191, 199 (1992); *Lopez Torres v. New York State Bd. of Elections,* 462 F.3d 161, 203 (2d Cir. 2006), *rev'd on other grounds* 128 S. Ct. 791 (2008); *Patriot Party v. Allegheny County Dept. of Elections,* 95 F.3d 253, 267-68 (3d Cir. 1996); *see, e.g.. Nader v. Brewer,* 531 F3d 1028, 1039-40 (9th Cir. 2008).

In this case, however, the defendant hasn't even attempted to meet his burdens. He has given the Court nothing more than a laundry list of state interests without making any effort to discuss their strength, legitimacy, or the extent to which they necessitate the burdens on the plaintiffs' First Amendment rights. (Defendants' Brief 14-15.) The Court should grant the plaintiffs' motion for a preliminary injunction on this basis alone. *E.g. Brewer,* 531 F.3d at 1040.

Furthermore, even a cursory review of the laundry list reveals that the defendant has asserted interests that are weak, illegitimate and that do not necessitate Montana's current scheme. For example, the defendant claims a state interest in "equalizing the timelines to level the playing field." (Defendant's Brief 14.) It is well established, however, that this interest is insignificant. *See, e.g., Anderson,* 460 U.S. at 799-801; *Cromer v. South*

10

*Carolina,* 917 F.2d 819, 824-25 (4th Cir. 1990). And at least three of the asserted interests appear to be nothing more than an illegitimate desire to shield the major parties from competition from independent candidates. (For example: "[L]essening the likelihood of multiple independent candidates appearing on the ballot and diluting the will of the majority.") *See Clingman v. Beaver,* 544 U.S. 581, 603 (2005) (O'Connor, J., concurring) (noting that "those in power may be using electoral rules to erect barriers to electoral competition").

Several of the asserted interests appear not to necessitate the current scheme. For example, the defendant claims that the scheme is justified by a desire to provide "sufficient time and staff to scrutinize petition signatures." (Defendant's Brief 14.) This is ridiculous. County officials have the same one-week period within which to review signatures under the current scheme that they had under the old scheme. If the State had wanted to give election officials more time, it should have expanded the petition review period. Instead, it just took time away from would-be candidates.

Similarly, the defendants assert a desire to "reduc[e] the administrative burden on busy election officials in the weeks before the primary." (Defendant's Brief 14.) Nevermind that independent candidates are so rare in Montana that it would probably be a stretch to say that they cause a

11

significant burden.  Suffice it to say that a desire to relieve the burden on election officials doesn't require the State to move the one-week signature review period forward by more than 10 weeks.  The State could have achieved the same end by moving the deadline forward by only a few weeks.  Or it could have moved the deadline *back* by a few weeks.  Or it could have kept the old filing in place and given election officials more time to review the signatures.  Or it could have simple required fewer signatures.  In any event, it's clear that this asserted state interest doesn't make it necessary to burden the plaintiffs' rights.

Although the plaintiffs would like the opportunity to respond in more detail to each of the interests asserted on the defendant's laundry list, the Court's strict page and time limits make it impossible to do so.  All of the asserted interests flunk the second step of the *Anderson* test.  Accordingly, and because the defendant hasn't even attempted to meet his burden of showing *how* the State's interests justify the scheme, the Court should conclude that the plaintiffs are likely to succeed on the merits of their claim.

## IV.    The balance of equities favor the plaintiffs.

We are now 46 days from the election, and the defendant argues that it's already too late to add Kelly to the ballot. (Defendant's Brief 15-19.) Specifically, he argues that an injunction would be inequitable because it

12

would delay the delivery of absentee ballots to voters eligible to cast a ballot under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA). (*Id.*)

The plaintiffs want to be perfectly clear: **The plaintiffs are not asking this court to delay the delivery of absentee ballots to UOCAVA voters.** The small number of UOCAVA voters who may get a ballot without Kelly's name on it before ballots can be reprinted can nonetheless vote for him by writing in his name. 42 U.S.C. § 1973ff-2.

The defendant does *not* argue that it's too late to put Kelly on the ballot for non-UOCAVA voters – nor could he.  State law *expressly prohibits* election officials from distributing absentee ballots to non-UOCAVA voters before October 4 – fifteen days from today – and a representative from the Secretary of State's office has indicated that it takes no more than nine days to print ballots. (Kimmit Affidavit ¶ 8.) That leaves plenty of time within which to reprint any non-UOCAVA absentee ballots that have already been printed, and it's more than plenty of time to put Kelly on the ballot for in-person voting on November 4.

Cases ordering candidates onto the ballot with less time than we've got available here are legion. *See, e.g., Norman v. Reed,* 502 U.S. 279, 287 (1992) (October 25);  *McCarthy v. Briscoe,* 429 U.S. 1317 (1976) (September 27);

13

*Hadnott v. Amos,* 394 U.S. 358, 361 (1969) (October 19); *Davis v. Adams,* 400 U.S. 1203 (1970) (August 5 – before primary election on September 8). If states like Alabama, Florida, Illinois, and Texas can put a candidate on the ballot with dispatch, then so can Montana.

*Briscoe* is particularly instructive. The Supreme Court ordered Eugene McCarthy onto the ballot in Texas even though the candidate hadn't submitted any petitions and hadn't filed suit until July 30. 400 U.S. at 1318. This is not a case where the plaintiffs have slept on their rights. They filed suit soon after the deadline. As the Supreme Court made clear in *Briscoe,* it would be inequitable to conclude that this violation of the plaintiffs' rights must go unremedied. 429 U.S. at 1322.

Under these circumstances, and particularly because the plaintiffs aren't asking the Court to delay the distribution of ballots to UOCAVA voters, the Court should conclude that the equitites favor the plaintiffs.

## CONCLUSION

The Court should grant the plaintiffs' motion for a preliminary injunction.

Respectfully submitted,


/s/ Elizabeth L. Griffing
ELIZABETH L. GRIFFING
American Civil Liberties Union
	of Montana Foundation, Inc.
P.O. Box 9138
241 E. Alder, Ste B.
Missoula, MT 59801
(406) 830-3009
betsyg@aclumontana.org

/s/ Bryan Sells
BRYAN SELLS
LAUGHLIN McDONALD
American Civil Liberties Union
	Foundation, Inc.
Suite 1440
230 Peachtree Street, NW
Atlanta, GA 30303
(404) 523-2721
bsells@aclu.org