

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| STEVE KELLY AND CLARICE DREYER, | |
| Plaintiffs, | No. CV-08-25-BU-SEH |
| vs. | **MEMORANDUM and ORDER** |
| BRAD JOHNSON, in his official capacity as Secretary of State of the State of Montana, | |
| Defendant. | |

## INTRODUCTION

Plaintiffs, Steve Kelly and Clarice Dreyer, brought this action challenging the constitutionality of Montana's ballot-access program for independent and minority party candidates.[1]

---

[1] Specifically, the Complaint requests the Court to:

   (1)  take original jurisdiction over [the] case;

   (2)  enter a declaratory judgment that Montana's ballot-access [program] for independent and minor-party candidates seeking to run for non-presidential offices in the November general election violates rights guaranteed the plaintiffs under the First and Fourteenth Amendments to the United States Constitution . . .;

   (3)  enjoin the defendants from enforcing Montana's ballot-access [program] for independent and minor-party candidates seeking to run for non-presidential offices in the November general election;

   (4)  award the plaintiffs nominal damages;

The Complaint was filed on April 8, 2008. Defendant, Brad Johnson, appeared and answered on May 7, 2008. Over 3 ½ months later, on August 26, 2008, with no developments of significance of record in the interim,[2] Plaintiffs filed a motion supported by a brief for preliminary injunction to prohibit enforcement of the ballot-access program in issue for the November 2008 election.[3] A status conference with counsel was conducted on September 2, 2008. Defendant filed a brief in opposition to the motion on September 9, 2008. An expedited evidentiary hearing on the injunction request was held on September 19, 2008. The preliminary injunction request was submitted for decision on September 22, 2008, after post-hearing briefs and an offer of proof were filed on that date.

## BACKGROUND

Montana law requires that an independent candidate for public office file a petition for nomination containing certain specified information in a form prescribed by the Secretary of State, (Mont. Code Ann. § 13-10-501), that the petition be supported by the signatures of qualified electors of 5% or more of the total vote cast for the successful candidate for the same office at the last general

---

(5) award the plaintiffs the cost of this action together with their reasonable attorneys' fees . . .; and

(6) retain jurisdiction [over] this action and grant the plaintiffs any further relief which . . . [the] Court [deems] necessary and proper.

(Verified Compl. at 6-7 (April 8, 2008).)

[2] On May 15, 2008, Plaintiffs did file a Motion to Strike Defendant's first affirmative defense. That motion was denied by Order of the Court on June 11, 2008.

[3] The August 26, 2008, motion included an unpleaded request for placement of Plaintiff Kelly's name on the 2008 general election ballot as an independent candidate for the United States Senate.

election, (Mont. Code Ann. § 13-10-502(2)), that the petition be filed no later than 75 days before the date of the primary election, (Mont. Code Ann. §§ 13-10-503(2) and 13-10-201(6)), and that the petition be accompanied by the required filing fee, (Mont. Code Ann. §§ 13-10-201(3) and 13-10-202(3)). Plaintiffs contend that the cumulative effect of the statutory program imposes an unconstitutional burden on Kelly's efforts to run for the United States Senate as an independent candidate and upon Dreyer's desire to vote for him in that capacity.

## DISCUSSION

The moving party must show, in order to obtain a preliminary injunction:

1. There is a strong likelihood of success on the merits;

2. There is a possibility of irreparable injury to the moving party if preliminary relief is not granted;

3. The balance of hardships favors the moving party; and

4. The public interest favors granting preliminary relief.

See Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007).

Alternatively, injunctive relief may be granted if a moving party demonstrates either:

> (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor.

Lands Council, 479 F. 3d at 639 (citing Clear Channel Outdoor Inc. v. City of Los Angeles, 340 f.3d 810, 813 (9th Cir. 2003)(internal quotation marks omitted).

The alternate standard is not to be considered two separate tests but rather "extremes on a single continuum: 'the less certain the district court is of the likelihood of success on the merits,

the more [the moving party] must convince the district court that the public interest and balance of hardships tip in [his or her] favor.'" Lands Council, 479 F. 3d at 639 (citing Sw. Voter Registration Educ. Project v. Shelley, 344 F. 3d 914, 918 (9th Cir. 2003)(en banc)(per curiam)[4].

A strong likelihood of success on the merits and a balance of the hardships favoring the moving party are common to both alternatives. Plaintiffs have established neither.

Plaintiffs, of course, carry the burden of proof in establishing entitlement to a preliminary injunction. See Land Council v. McNair, 537 F.3d 981, 1003 (9th Cir. 2008). Whether that burden is met is to be determined from the record before the Court. See Am. Party of Tex. v. White, 415 U.S. 767, 790-91 (1974).

The ability to establish a probability of success on the merits must be grounded in the capacity, in good faith, to present the claim to the Court in the first instance. See Christian Populist Party of Arkansas v. Secretary of State of Arkansas, 650 F. Supp. 1205, 1209-10 (E.D. Ark. 1987)(party who fails to make a good faith effort to comply with a state's ballot-access program may lack standing to challenge that program). Here, the record is undisputed that Kelly has made no showing of any effort, good faith or otherwise, at compliance with the statutory program for placement of his name on the ballot.

No petition for nomination as required by Mont. Code Ann. § 13-10-501 is shown to have been submitted to the Secretary of State. (See Defendant's Stipulated Facts at 4 (Sept. 19, 2008).) No signatures of qualified electors were submitted as required under Mont. Code Ann. § 13-10-502. (See Hr'g Tr. 48:15-17, 67:5-11 (Sept. 19, 2008).) The filing fee specified in Mont. Code Ann. § 13-10-202(3) which Kelly acknowledged he could have paid, was never tendered.

---

[4] The criteria for a preliminary injunction are not disputed.

(See Hr'g Tr. 49:20-50:3 (Sept. 19, 2008).) Moreover, Kelly declined to seek to file as an indigent candidate as permitted by Mont. Code Ann. §§ 13-10-201(3) and 13-10-203. (See Hr'g Tr. 63:8-16, 64:16-22 (Sept. 19, 2008).)

Particularly significant is the undisputed fact that Kelly never even made the decision to run as an independent candidate until after April 15, 2008. (See Hr'g Tr. 77:23-78:2 (Sept. 19, 2008).) By the time Kelly made that decision, the deadline for filing, March 20, 2008, had long passed. This deliberate delay, coupled with the Plaintiffs' decision, after filing the case in April 2008, to take no action to seek injunctive relief for over 3 ½ months strongly suggests a tactical approach intended to create an atmosphere justifying a request for rush to judgment.

Clean hands and good faith are cornerstones of the requirements any litigant must meet who seeks injunctive relief. See Fulani v. Hogsett, 917 F.2d 1028, 1031 (7th Cir. 1990)(claims against a state electoral procedure must be expressed expeditiously or else entitlement to injunctive or other equitable relief may be lost). Such requirements are particularly relevant when the objective of the injunctive relief, if achieved, could have far reaching statewide implications for a national office election. See discussion Purcell v. Gonzalez, 549 U.S. 1, 7 (2006);Nader v. Keith, 385 F.3d 729, 736-37 (7th Cir. 2004). Plaintiffs, on this record, have not demonstrated the requisite good faith showing of a strong probability of success on the merits.

As noted, Kelly made no effort to comply with the component of the ballot-access program requiring payment of the 1% filing fee (Mont. Code Ann. § 13-10-202(3)), a fee which he acknowledged he could have paid. The 1% filing fee has been a part of Montana's ballot-access program since 1979. (See 1979 Mont. Laws Ch. 571; Plaintiffs' Proposed Stipulations of Fact at 3 (Sept. 19, 2008).) Literally scores of candidates have complied with it. No evidence

worthy of note is before the Court that is persuasive of establishing the proposition that the fee, as a component of the program, is unconstitutional.

Kelly's failure or refusal to even attempt compliance with Mont. Code Ann. § 13-10-201(3) and 13-10-202(3), like his similar failure to comply with Mont. Code Ann. § 13-10-502(2), precludes his capacity to challenge the statutory program as a whole. See Storer v. Brown, 415 U.S. 724, 736 (1974)(independent statutory bar to candidacy deprives plaintiff of standing to challenge other provisions of election laws); see also Renne v. Geary, 501 U.S. 312, 319 (1991).

Even if it were said that Plaintiffs have standing, the record nevertheless fails to support any finding of a strong likelihood of success on the merits or a balance of hardships favoring Plaintiffs. As noted, there is an absolute paucity of evidence that the requirement for payment of the filing fee is unconstitutional, particularly since the law permits a waiver of the fee for indigent candidates, which Kelly rejected.

The 5% elector-signature requirement of Mont. Code Ann. § 13-10-502 has been a part of Montana's ballot-access program since 1895. (Plaintiffs' Proposed Stipulations of Fact at 2 (Sept. 19, 2008).) It has been met in many Montana elections. Plaintiff Kelly himself met this 5% signature requirement in 1994 as a candidate for United States Representative. (See Hr'g Tr. 40:3-25 (Sept. 19, 2008).) No probability that this requirement would be found unconstitutional has been shown.

The balancing of hardships similarly does not, on the record before the Court, weigh in Plaintiffs' favor. An injunction requiring that Kelly's name be added to the 2008 general election ballot, at this late date, would create chaos for the election administrators as the entire ballot would have to be reformatted after many have already been printed. It would cause election

officials to be unable to meet the statutory deadlines for making absentee ballots available for overseas and absent military personnel (see Mont. Code Ann. § 13-13-205; Hr'g Tr. 85-86 (Sept. 19, 2008)), and it would create a serious risk that many members of the military serving abroad may not have sufficient time to receive ballots, vote and return them to election officials in time for them to be counted. (See Hr'g Tr. 84:23-87:1, 88:11-91:15 (Sept. 19, 2008).)[5] Conversely, Plaintiffs have produced no evidence that they will suffer material hardship if Kelly's name is not placed on the ballot. Any hardship Plaintiffs may incur results directly from their own lack of diligence in pursuing this action.

Plaintiffs have failed to make the case for a preliminary injunction.

## ORDER

1. Plaintiffs' Motion for a Preliminary Injunction[6] is DENIED.

2. The Court will set a status conference for the purpose of establishing a schedule for the final disposition of this matter by separate order.

DATED this 9th day of October, 2008.

SAM E. HADDON
United States District Judge

---

[5] Plaintiffs' suggestion by brief that absentee voters eligible to cast a ballot under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 42 U.S.C. §§ 1973ff-1973ff-6, who might receive a ballot without Kelly's name on it could nevertheless vote for him by writing in his name, ignores the requirements of Montana law that write-in candidates file a declaration of intent to run and pay the required filing fee. Mont. Code Ann. § 13-10-211.

[6] Document No. 16.