STEVE BULLOCK
Montana Attorney General
CHRIS D. TWEETEN
Chief Civil Counsel
ANTHONY JOHNSTONE
Solicitor
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Telephone:  (406) 444-2026
Fax:  (406) 444-3549

COUNSEL FOR DEFENDANT
  SECRETARY OF STATE

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BUTTE DIVISION

| | | |
|---|---|---|
| STEVE KELLY and CLARICE DREYER, | ) ) ) | Cause No. CV-08-25-BU-SEH |
| Plaintiffs, | ) ) ) | **SECRETARY OF STATE'S STATEMENT OF UNDISPUTED FACTS** |
| v. | ) ) | |
| LINDA MCCULLOCH, in his official capacity as Secretary of State of the State of Montana, | ) ) ) ) | |
| Defendant. | ) | |

The Montana Secretary of State submits the following material undisputed

facts under L.R. 56.1.

I.     ELECTION ADMINSTRATION IN MONTANA

1.     Elections in Montana generally are administered by the clerks and recorders of Montana's 56 counties, by staffs that vary between one half-time-equivalent election administrator to four full-time election administrators.  Kimmet Aff. ¶ 6, Ex. B.

2.     The election calendar covers more than a year.  Beginning in January, election administrators process absentee voter confirmation forms. There were 206,798 absentee voters in Montana.  Kimmet Aff. ¶¶ 3, 21, Ex. A.

3.     After January and before the candidate filing deadline in late March, election administrators have the time and resources to process independent candidate petitions. Kimmet Aff. ¶¶ 8, 19, Ex. A.

4.     When the candidate filing deadline closes, election administrators must complete at least 27 different tasks in preparation for the approaching primary election, which are similar to preparations for a general election. Kimmet Aff. ¶¶ 15-17, Ex. A; 9/9/08 Kimmet Aff. (Doc. 28-2).

5.     In the past decade, the legislature has added two new programs that expand access to the electoral process:  no-excuse absentee voting and late voter registration. Administering these programs imposes heavy demands on county election offices during the 30 days before the primary and general elections.  For

example, registration requires five to ten minutes per voter.  Kimmet Aff. ¶¶ 18-23, Ex. A.

6.      After the primary election is complete, election administrators must begin processing initiative petitions, which requires verifying and certifying more than 120,000 signatures in June and July of a typical year.  It takes approximately 2 minutes to verify each petition signature.  After the signatures on a petition have been checked it takes another 15 minutes to input the petition data.  Kimmet Aff. ¶¶ 26-27; Miller Aff. ¶ 18.

7.      In August, the general election preparations begin with the same steps taken for the primary election. Kimmet Aff. ¶ 27, Ex. A; 9/9/08 Kimmet Aff. (Doc. 28-2).

8.      This election process does not account for registration and petition challenges, which have increased in recent years placing additional demands on limited election administrator resources.  Kimmet Aff. ¶ 24.

9.      Montana's ballot access rules apply to more than the United States Senate seat.  For example, in 2008 there were nine or ten partisan races for state office on the general election ballot (seven statewide races, plus partisan state races for Public Service Commissioner and one or two state legislative races), as well as nonpartisan district court races and three ballot issues, not including local elections and ballot issues.  Just one minor party or independent candidate in each of those

races would add nine or ten more state candidates for voters to consider, increasing the risk of voter error and the difficulty of ballot design.  Kimmet Aff. Ex. D; Donovan Rpt. at 5-6.

10.     Montana's ballot access rules help prevent voter confusion and promote voter education.  Kimmet Aff. ¶¶ 9-11, 13-14; Donovan Rpt. at 5-8.

11.     Montana's ballot access rules help preserve political stability and increase the chances that the election winner will be the choice of a majority of its voters.  Kimmet Aff. ¶¶ 12-13, Ex. B; Mitchell Aff. ¶ 9; Donovan Rpt. at 2-5.

12.     Montana's ballot access rules help election administrators protect the integrity of the election process.  Kimmet Aff. ¶¶ 4, 6-11; 15-27.


## II.     BALLOT ACCESS IN MONTANA

13.     Since statehood, hundreds of minor party and independent candidates for state offices have qualified under Montana's ballot access laws, including more than 200 statewide candidates.  Miller Aff. Exs. B-D; Donovan Rpt. Fig. 1; Kelly Interrog. Resps. 6, 7.

14.     In the first 50 years of statehood, a historically high number of minor party and independent candidates qualified for the ballot, reflecting national trends rather than particular changes in law.  Donovan Rpt. at 18; Miller Aff. Exs. B-D; Donovan Rpt. Fig. 1; Kelly Interrog. Resps. 6, 7.

15.     The number of minor party and independent candidates declined after World War II and through the 1960s, also reflecting national trends rather than particular changes in law.  Donovan Rpt. at 4-5, 18; Miller Aff. Exs. B-D; Donovan Rpt. Fig. 1; Kelly Interrog. Resps. 6, 7.

16.     After a series of legislative revisions between 1969 and 1979, by which time the filing deadline, filing fee, and signature requirements for ballot access were substantially the same as they are today, minor party and independent candidate activity increased.  Miller Aff. Exs. C, D; Donovan Rpt. Figs. 2, 4.

17.     Since 1970, over 200 minor party and independent candidates for state offices have qualified for the ballot in Montana, including 46 statewide candidates. Miller Aff. Exs. B-D, Donovan Figs. 2, 4; Kelly Interrog. Resps. 6, 7.

18.     Since 1972, four minor parties qualified ten candidates with six different petitions by the primary filing deadline.  Miller Aff. ¶ 13; Kelly Interrog. Resps. 6, 7.

19.     In 2008, Montana had minor party gubernatorial candidates in equal or greater numbers than 24 other states.  Donovan Rpt. p. 23, n.64.

20.     Since 1972, 39 out of 44 independent candidates who petitioned for ballot access qualified.  In 103 statewide non-presidential races, only 3 independent candidates have petitioned for ballot access.  All 3 of those candidates petitioned in 1994, when Mr. Kelly qualified with 11,666 valid

signatures, and two others failed to qualify with far fewer signatures.  Miller Aff.

Exs. B, D; Kelly Interrog. Resps. 6, 7.

21.     In 2008, 27 states out of 33 holding United States Senate elections,

including Montana, had no independent candidates for that office.  Donovan

Rpt. at 25, n.27.

22.     Mr. Kelly has also qualified for the ballot as a Democratic candidate

for United States House in 2002.  Miller Aff. ¶ 6.

23.     Both independent candidates who petitioned for ballot access in 2008

qualified, and no independent candidate has failed to qualify since Mr. Kelly

qualified in 1994.  Miller. Aff. Ex. D; Kelly Interrog. Resps. 6, 7.

24.     In 2008, the 10,243 signatures required for independent United States

Senate candidates equaled 1.5 percent of the 668,085 registered voters, and

2 percent of the 497,599 votes cast at the general election.  Miller Aff., ¶ 20.

25.     There is no time limit for gathering ballot access petition signatures,

and voters can sign as many petitions as they want regardless of their participation

in a primary.  Miller Aff. ¶ 2.

26.     In April and May of 1994, Mr. Kelly personally collected most of the

approximately 13,000 signatures he submitted to qualify as an independent

candidate.  P.I. Tr. (Kelly) 41:4-43:12.

27.     In addition to minor party candidates, petitioners for statewide initiatives, local referenda, voter registration drives, and other issues have successfully gathered thousands of signatures in, around, and before March at rates that allow independent candidates to qualify by petition on the candidate filing deadline using the same methods and techniques.  Miller Aff. ¶¶ 13, 23; Mitchell Aff.; Singer Aff.; Pearson Aff; P.I. Tr. (Kelly) 56:10-11, 16; Kelly Interrog. Resps. 6, 7.

28.     The revisions in Montana's ballot access laws at issue have not been followed by any measurable reduction in the number of minor party and independent candidates.  Donovan Rpt. 25-26, 35; Kelly Interrog. Resps. 6 & 7.

## III.    THE 2008 ELECTION

29.     Mr. Kelly has served as the coordinator of the Montana Green Party. Nearly a year before the candidate filing deadline, Mr. Kelly invited supporters to the Green Party's annual meeting where petition forms to qualify for minor party status were distributed.  Mr. Kelly did not file for Green Party minor party status. Kelly RFA Resps. 1, 2, 20; Miller Aff. Ex. A; P.I. Tr. 55:19-56:1; P.I. Ex. 502.

30.     The only public statement Mr. Kelly made concerning his campaign was in February 2008, when he said we was "not running" and would "sit on the sidelines and hurl insults."  Kelly RFA Resp. 18; Ex. A.  Mr. Kelly later testified

he did not decide to run for office until late April, two weeks after he filed the verified complaint.  P.I. Tr. 77:23-78:2.

31.    Mr. Kelly did not attempt to qualify for the ballot in 2008.  He did not say or write anything about his candidacy other than the comment discussed above. He has identified no supporters of, or expressions of support for, his candidacy. He gathered no signatures.  He did not request or file forms to petition, declare his candidacy, or waive filing fees.  He did not file a write in declaration.  He has not expressed interest in, and has taken no actions toward, any candidacy in the future. Kelly Interrog. Resp. 1 & 3; Kelly RFP Resps. 1-2, 5; Kelly RFA Resps. 5, 10; Miller Aff. ¶¶ 4, 7.

32.    Mr. Kelly's efforts to run as an independent candidate for the United States Senate in the 2008 General Election would not have qualified him to appear on a ballot under any of Montana's ballot access laws that have been in effect since statehood, or in any other state under current law.  Plaintiffs' Statement of Undisputed Facts ¶ 16; Kelly's Interrog. Resps. 1, 8-11; Winger Dec. (Doc. 68-6) at 6-11.

33.    If Mr. Kelly had qualified as "Independent" candidate under minor party rules, he would have appeared on the ballot with the same designation as if he had qualified under independent candidate rules.  Kimmet Aff. ¶ 7.

34.     All 36 statewide candidates in 2008 paid the required filing fee, including all seven Senate candidates.  However, any candidate could waive the filing fee by submitting a verified indigency statement and the signatures required for qualifying as an independent candidate.  Mr. Kelly, who has an income of considerably less than $30,000 annually, paid the filing fee in 1994 and could afford to pay it again in 2008.  Miller Aff. ¶¶ 10,16; P.I. Tr. 49:21-25, 50:1-3, 14-17.

35.     There was increased early voter interest in the 2008 election. The Republican Party moved its presidential preference caucus to February 5.  Kimmet Aff. ¶ 14, Ex. A.

36.     Thousands of voters registered to vote in late 2007 and early 2008. Singer Aff. ¶¶ 4-5.

37.     All of the eligible incumbents had filed to campaign for reelection by January 2007, including Mr. Kelly's potential opponent, Senator Max Baucus, who filed in May 2003.  All but one of the major party candidates for open seats in statewide offices had filed to campaign by August 2007.  Non-incumbents for statewide partisan office raised more than $1.4 million by March 2008.  Miller Aff. Exs. E, F.

38.     Montana has had several recent statewide elections in which the winning candidate received less than a majority of the votes cast as a result of the

number of candidates on the ballot.  Votes for non-major party candidates increase

the chances that the voters' least preferred major party candidate could win.  Miller

Aff. ¶ 22; Donovan Rpt. at 3.

Respectfully submitted this 1st day of May, 2009.

STEVE BULLOCK
Montana Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401


By: */s/  Anthony Johnstone*
ANTHONY JOHNSTONE
Solicitor

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2009, an accurate copy of the foregoing

Statement of Undisputed Facts was served on the following persons by the

following means:

 1, 2, 3       CM/ECF

        1      Clerk, U.S. District Court

        2      Mr. Bryan Sells
                   Senior Staff Counsel
                   Southern Regional ACLU
                   230 Peachtree Street, N.W.
                   Suite 1440
                   Atlanta, GA 30303-1513

        3      Ms. Elizabeth L. Griffing
                   American Civil Liberties Union of Montana Foundation, Inc.
                   241 East Alter, Suite. B
                   P.O. Box 9138
                   Missoula, MT 59802-9138

DATED:  May 1, 2009                        /s/ Anthony Johnstone
                                              ANTHONY JOHNSTONE
                                            Assistant Attorney General
                                            215 North Sanders
                                            P.O. Box 201401
                                            Helena, MT 59620-1401