STEVE BULLOCK
Montana Attorney General
CHRIS D. TWEETEN
Chief Civil Counsel
ANTHONY JOHNSTONE
Solicitor
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-2026
Fax: (406) 444-3549

COUNSEL FOR DEFENDANT
  SECRETARY OF STATE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| STEVE KELLY and CLARICE DREYER,<br><br>  Plaintiffs,<br><br>  v.<br><br>LINDA MCCULLOCH, in her official capacity as Secretary of State of the State of Montana,<br><br>  Defendant. | Cause No. CV-08-25-BU-SEH<br><br>**SECRETARY OF STATE'S REPLY BRIEF** |

## ARGUMENT

"An opposing party . . . must set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Plaintiffs cannot "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Plaintiffs' Statement of Genuine Issues (Doc. 86, "Pls.' Issues") recites the conclusory allegations that Rule 56(e)(2) disqualifies and the Supreme Court warned against in Lujan:

1. Plaintiffs assert independent candidates "have not enjoyed much success," but do not dispute that nearly every independent candidate who has petitioned for ballot access in Montana has qualified. Compare Pls.' Issues, ¶ 1 with State's Statement of Undisputed Facts (Doc. 84, "State's Facts"), ¶¶ 13-21.

2. Plaintiffs argue "Montana's ballot-access scheme imposes a heavy burden," but do not dispute that hundreds of candidates have successfully petitioned for ballot access. Compare Pls.' Issues ¶ 2 with State's Facts, ¶¶ 17-27.

3. Plaintiffs claim "there will be no [independent Senate] candidates on the ballot" in Montana, but confirm that the same is true in most states. Compare Pls.' Issues, ¶ 3, with State's Facts, ¶ 21 and Cole Report at 21-23.

4. Plaintiffs argue "Montana's ballot access requirements are much greater than necessary," but do not dispute that they could not change without

compromising early voting, late registration, and the initiative process.  <u>Compare</u> Pls.' Issues, ¶ 4, <u>with</u> State's Facts ¶¶ 1-12.

    5.    Plaintiffs concede the "5,000-signature requirement for minor party status and ballot access has proven more than adequate" for constitutional purposes, and do not dispute that Mr. Kelly could run as an independent under that requirement.  <u>Compare</u> Pls.' Issues, ¶ 5, <u>with</u> State's Facts, ¶ 33.

    6.    Plaintiffs suggest "[a] filing deadline in June or July," but they do not dispute that the State's limited election administration staff already must devote that time to counting initiative signatures.  <u>Compare</u> Pls.' Issues, ¶¶ 6 & 7, <u>with</u> State's Facts, ¶ 6.

An opposing party's response must identify specific facts in the record that establish a genuine issue; neither the State nor the Court need search for them in the hundreds of pages deposition testimony Plaintiffs have filed like so much makeweight.  <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>Lujan</u>, 497 U.S. at 888.  Having failed to satisfy Fed. R. Civ. P. 56(e)(2), Plaintiffs are subject to summary judgment.

## I.    A NON-CANDIDATE WITH NO SUPPORT LACKS STANDING.

Plaintiffs bring a facial challenge regardless of whether the laws at issue would be constitutional as applied to a non-candidate like Mr. Kelly.  (Pls.' Opp'n at 3-7.)  "Facial challenges to statutes on first amendment grounds . . . may involve

questions on which summary judgment is often appropriate." IDK, Inc. v. Clark County, 836 F.2d 1185, 1189 (9th Cir. 1988). Where, as here, the Court has the benefit of a preliminary injunction hearing and an extensive record, it may apply the relevant law to that record and render summary judgment. Id. at 1189-90.

In arguing their standing, Plaintiffs misread dicta in Erum v. Cayetano, 881 F.2d 689 (9th Cir. 1989). Pls.' Opp'n at 4. Mr. Erum was "an erstwhile and potentially future candidate," id. at 691, who submitted signatures and ran in the primary. Id. at 690, 690 n.1. None of the other cases Plaintiffs cite involved a non-candidate like Mr. Kelly. See, e.g, Williams v. Rhodes, 393 U.S. 23, 28 (1968) (Socialist Labor Party had conventions and executive committee); Nader v. Keith, 385 F.3d 729, 736 (7th Cir. 2004) (Nader declared his candidacy). Mr. Kelly has not announced a candidacy, gathered a signature, identified supporters, or even expressed an interest in a future candidacy. Cf. State's Br. at 7. Even if supporters alone could confer standing on Mr. Kelly, he has identified none. See State's Facts, ¶ 31; Kelly Interrog. Resp. 2; Kelly RFP Resp. 2.

## II.    THE BALLOT ACCESS LAWS SEVERELY BURDEN NO ONE.

Plaintiffs' challenge to laws not applied to them is not only a matter of standing. "Facial challenges are disfavored" in election law cases. Washington State Grange v. Washington State Republican Party, 128 S. Ct. 1184, 1190 (2008).

This high standard warrants summary judgment for the State.  See Crawford v. Marion County Election Bd., 128 S. Ct. 1610, 1622-23 (2008) (affirming summary judgment to defendants when plaintiffs "have not demonstrated that the proper remedy--even assuming an unjustified burden on some voters--would be to invalidate the entire statute"); State's Br. at 11.  Plaintiffs ignore these cases.

### A. This Case Is About "Independent and Minor-Party Candidates."

The State could be excused for thinking this was a case about "minor parties."  Pls.' Opp'n at 7.  The Complaint alleges that "[a]t issue is Montana's ballot-access scheme for independent and *minor-party* candidates," a point it repeats some 15 times.  Compl. (Doc. 1) at ¶ 1 (emphasis added); see also ¶¶ 8, 12, 14, 20, 22, 24, 25, 28, 29, 30, 31, 32, 35(2), 35(3).  Plaintiffs had it right the first time:  "nothing in Anderson requires a state to accommodate each candidate's druthers about how he should appear on the ballot."  Stevenson v. State Bd. of Elections, 794 F.2d 1176, 1179 (7th Cir. 1986) (Easterbrook, J., con.).

Plaintiffs do not address the cases that support the State's argument.  Pls.' Opp'n 8-9; State's Br. at 22-26.  Instead, they rely on courts' rejections of more burdensome minor party alternatives.  See, e.g., Storer v. Brown, 415 U.S. 724, 745 (1974) (signatures equal to 10% of vote or 1% of voter registrations, followed by primary and party conventions).  More fundamentally, it is undisputed that Mr. Kelly could have petitioned to run as an "independent" under minor party

rules.  See State's Facts, ¶ 33.  In Nader v. Brewer, 531 F.3d 1028 (9th Cir. 2008), Arizona did not argue, the Court of Appeals did not consider, and Plaintiffs do not explain, whether an independent candidate could petition under that state's minor party rules.

Even if Mr. Kelly had a right to access the ballot according to his druthers, Plaintiffs ignore two other reasons the Court should consider the entirety of the law.  First, lone statewide candidates have qualified as minor parties under the same requirements applicable to independent candidates.  See State's Undisputed Facts, ¶ 18; Miller Aff. (Doc. 77), ¶¶ 13(l) (same deadline, filing fee, and signature requirements), 13(m) (same deadline and filing fee).  Second, the fact that most candidates have chosen the minor party path over the independent path, even when the requirements are substantively identical, disproves rather than proves Plaintiffs' point.  Pls.' Opp'n at 15; State's Br. 4-6.  Diligent independent candidates and minor party candidates alike succeed at qualifying for the ballot.  See State's Undisputed Facts, ¶ 20; Miller Aff., Ex. D (Doc. 77-5).

**B.     This Case Is Not About Presidential Elections in Other States.**

Plaintiffs wield Anderson v. Celebrezze, 460 U.S. 780 (1983), and Nader v. Brewer, 531 F.3d 1028 (9th Cir. 2008), as talismans rather than cite them as cases that hold that ballot access challenges "cannot be resolved by any 'litmus paper test' that will separate valid from invalid restrictions." Anderson, 460 U.S. at 789,

quoting <u>Storer</u>, 415 U.S. at 730; <u>Nader</u>, 531 F.3d at 1034. They suggest without citation that statewide petition requirements should be held to a higher standard than presidential petition requirements. Pls.' Opp'n at 13. That is not the law: "in the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest." <u>Id.</u> at 794-95; <u>Nader</u>, 531 F.3d at 1038.

Plaintiffs also are incorrect that courts have "struck down lesser burdens than those at issue here." Pls.' Opp'n at 11; <u>see</u> State's Br. at 25. For example, the dissent in <u>Council of Alternative Political Parties v. Hooks</u>, 121 F.3d 876 (3d Cir. 1997), makes the State's point: a record of access disproves any burden. <u>Id.</u> at 885 (Scirica, J., dissenting). Even so, the opinion itself relies on the state's lack of third parties "since at least 1913," <u>id.</u> at 881, a record far surpassed by independent and minor-party candidates in Montana. <u>See</u> State's Facts, ¶¶ 17-20. In the absence of a proven burden in this case, these cases about other states "cannot provide sufficient support" to create a genuine issue in the particular context of Montana elections. <u>Beard v. Banks</u>, 548 U.S. 521, 535 (2006).

   C. <u>**No Candidate Has Been Severely Burdened.**</u>

Plaintiffs take issue with the State's arguments that "Mr. Kelly has offered no evidence of a burden on any candidate" and "[t]he only comprehensive empirical analysis of ballot access rates before the Court shows no significant or substantial burden imposed by Montana law." Pls.' Opp'n at 16. The first

statement is irrefutable: Mr. Kelly has not offered an affidavit in support of his own case, his prior sworn testimony and interrogatory responses show no effort to qualify, and he identifies no other candidate who was unable to qualify as a result of an alleged burden. State's Facts, ¶¶ 31-32; <u>Libertarian Party v. Herrera</u>, 506 F.3d 1303, 1309-10 (10th Cir. 2007) (granting summary judgment in absence of candidate affidavits).

Plaintiffs' second statement concerns the experts they use to fill the vacuum left by their lack of actual candidates. The State does not dispute Mr. Pearson's claim that one person, working without any popular or financial support, would need to work hard over several months to qualify for the ballot; Mr. Kelly did exactly that. State's Facts, ¶ 26. This is consistent with other candidates and petitioners (including Mr. Pearson) who successfully gathered thousands of signatures over short periods of time throughout the year. State's Facts, ¶¶ 18, 27; Miller Aff., ¶ 13. The "burden" Mr. Pearson hypothesizes is constitutional. <u>See, e.g.</u>, <u>Andress v. Reed</u>, 880 F.2d 239, 242 (9th Cir. 1989) (approving 10,000 signatures within forty-five days).

Dr. Cole confirms Prof. Donovan's unsurprising finding that signature requirements limit ballot access to candidates with significant support: "[a]s the signature [requirement] increases, the number of independent candidates decreases." Cole Report at 13. While Plaintiffs expect "no independent Senate

candidates to make it onto the ballot," Pls.' Opp'n at. 18, they ignore Dr. Cole's finding that the same is true for 77 of the past 100 Senate elections (and 35 of the 50 states).  See Cole Report at 21-23.  Again, this is consistent with Prof. Donovan's finding that independent candidacies are rare "independent of ballot access rules."  Donovan Rpt. (Doc. 83-2) at 46, 33-40; State's Facts, ¶ 21.  The other four-fifths of Prof. Donovan's report are uncontested.  Pls.' Opp'n at 17; State's Facts, ¶¶ 13-23.

Just last week another court rejected claims like Mr. Winger's and Dr. Cole's that a law "is one of, if not the most, stringent in the country."  Block v. Mollis, No. 1:09-cv-00047-S-DLM, 2009 U.S. Dist. LEXIS 45796, at *31 n.17 (D.R.I. May 29, 2009) (case attached).  As the Block court held, "when the judgment of the legislature remains within the constitutional playing field, as it does with the fixed 5% figure, it is not this Court's role to re-write the legislature's handiwork based on a comparison to what other states have enacted."  Id. at *18.

Similarly, in asserting that "[c]ourts have not upheld more burdensome statutes," Plaintiffs still assume that the only rules that matter are the ones they challenge.  Pls.' Br. at 19.  For example, they try to distinguish Swanson v. Worley, 490 F.3d 894 (11th Cir. 2007) on the grounds that Alabama has a later filing date and requires 0.28% fewer signatures (but 27,270 more signatures) than Montana.  Cf. Winger Report (Doc. 68-6) at 11.  Then they claim the time for

signature gathering is "not an issue." Pls.' Opp'n at 20-21. This ignores Swanson's holding that Alabama's high signature threshold must be considered alongside "alleviating factors that eased the burden of gathering signatures," including "unlimited time for signature gathering." 490 F.3d at 904. Montana law offers all seven of the alleviating factors discussed in Swanson. Id. at n.11, citing Libertarian Party of Florida v. Florida, 710 F.2d 790, 794 (1983); Jenness, 403 U.S. at 438-39; cf. State's Facts, ¶ 25; Donovan Report at 18; Mont. Code Ann. §§ 13-10-501, -502, -503.

### III. MONTANA'S BALLOT ACCESS LAWS ARE JUSTIFIED.

Plaintiffs do not dispute how Montana's elections are administered. Compare State's Facts, ¶¶ 1-12, 33-38, with Pls.' Issues. Nor do they attempt to distinguish the nineteen cases the State has cited in support of Montana's election administration. Pls.' Opp'n at 22-35. Instead of addressing the undisputed reality of Montana's elections today and the cases that have kept up with that reality, Plaintiffs rely primarily on the Supreme Court's analysis of John Anderson's 1980 presidential campaign in Ohio. Under Anderson itself, the Court should side with the weight of authority and reject Plaintiffs' litmus tests. See State's Br. at 26-27.

#### A. The Laws Serve Voters.

In arguing that Montana's uncluttered ballots "seriously undermine the proferred justification," Plaintiffs forget the breadth of their challenge. Pls.' Opp'n

at 22.  Montana "has never had 12 candidates on the ballot for *any* statewide office" because since 1895 Montana has required that petitioning candidates show a "significant modicum of support," Jenness, 403 U.S. at 442, to meet a compelling interest in "regulating the number of candidates on the ballot," American Party, 415 U.S. at 782 n.14.  See State's Br. at 3, citing 1895 Mont. Pol. Code § 1313.  Plaintiffs have premised their challenge to this law on some hypothetical queue of "burdened" independent candidates; even one additional independent candidate in each statewide race could add a dozen more candidates for voters to evaluate each cycle.  See State's Facts, ¶ 9; Donovan Report at 8.

   Plaintiffs agree Mr. Kelly's alternate path to the ballot with 5,000 signatures under the minor party rules is constitutionally adequate.  Pls.' Br. at 23.  Still, an unbroken line of cases running from 1971 to last week has rejected this as a ceiling.  See Jenness, 403 U.S. at 442; Block, 2009 U.S. Dist. LEXIS 45796, at *16.  Plaintiffs' attempt to transform Montana's clearly permissible signature requirement into some kind of impermissible fee must fail for the same reason.  Pls.' Opp'n at 24.  Mr. Kelly has met that requirement before, and paid the filing fee, which is far below the constitutional limit.  See Pls.' Br. at 18-20.

   Plaintiffs' attack on Montana's efforts to maintain an informed electorate misses the point of the deadline: Montana voters are engaged earlier, the leading candidates filed months before the deadline, and a uniform deadline ensures that

candidates, voters, and election administrators know the field of candidates closes at a date certain. State's Facts, ¶¶ 35-37; Kimmet Aff., ¶¶ 9-14. Stuck in 1980, Plaintiffs talk about "vastly improved telecommunications networks" and other facts that appear nowhere in the record and are not at issue. Pls.' Opp'n at 24-26.

Finally, Plaintiffs assert that "Montana is limiting both electoral competition and competition in the market place of ideas" with neither legal nor factual support. Pls.' Br. at 26. This ignores history. Hundreds of candidates have competed against the two major parties, in numbers equal to or greater than those in 24 other states and several neighboring states. State's Facts, ¶¶ 13-23; Donovan Report at 31-35. If Plaintiffs think that excluding a non-candidate with no support and no platform like Mr. Kelly squelches "vigorous debate on the issues," they ask too much. "The function of the election process is 'to winnow out and finally reject all but the chosen candidates,' not to provide a means of giving vent to 'short-range political goals, pique, or personal quarrel[s].'" Burdick v. Takushi, 504 U.S. 428, 438 (1992), quoting Storer v. Brown, 415 U.S. 724, 735.

### B. Montanans Are Entitled to Competitive, Stable Elections.

Plaintiffs' argument that the State cannot "see that the election winner be the choice of a majority of its voters," Williams v. Rhodes, 393 U.S. 23, 32 (1968), is also unmoored from the record. Pls.' Br. at 27-31. Montana has had non-majority winners from the top of the ticket to the bottom, including at least 20 in the past

two election cycles.  State's Facts at ¶¶ 9, 38; Miller Aff., ¶¶ 21-22; Donovan Report at 7-10.  The fact that Montanans tolerate this in exchange for robust electoral competition does not mean, Pls.' Opp'n at 30, that it must throw its doors open to a dozen or more additional candidates on each statewide ballot.

Furthermore, it is undisputed that candidates can play spoiler by waiting out the primary and running as an independent in the general election; the filing deadline was moved in part as a response to this problem.  Mitchell Aff. (Doc. 78), ¶ 9; Kimmet Aff., Ex. B.  Plaintiffs do not explain how Montana's "sore loser" disaffiliation statute "is more than adequate to prevent" this problem.  Pls.' Br. at 29.  It is not:  lacking party registration common to other states, that law's application is limited to a small group of prior candidates and party officers.  Mont. Code Ann. § 13-10-507; Hooks, 179 F.3d at 80 (recognizing "legitimate and important State interest" in deadline notwithstanding sore loser law).

### C. **Montana May Offer Open Voting, Initiatives, *and* Ballot Access.**

Plaintiffs' final paragraphs make clear that they would rearrange the entire structure of Montana's election calendar to suit Mr. Kelly.  Pls.' Opp'n at 31-35.  Montana election officials might process a limited number of independent and minor party petitions in June and July--if they had nothing else to do.  Pls.' Opp'n at 33; Kimmet Aff., ¶¶ 8, 15.  The question posed by Plaintiffs' claims is not whether officials could meet Mr. Kelly's schedule in a vacuum; it is whether they

must do so at the expense of other policies that open the election process. Montanans through their legislature have decided that open access to the ballot through petitions should coexist with open access to the polls through early voting and late registration and open access to their laws through the initiative process. Requiring all candidates to file early to accommodate these other important interests imposes no "undue burden . . . [i]n the context of a nondiscriminatory deadline that applies to all parties and candidates". Texas Indep. Party v. Kirk, 84 F.3d 178, 184 (5th Cir. 1996).

Plaintiffs do not dispute that county election administrators must devote most of their time after the candidate filing deadline to the primary election. State's Facts ¶¶ 2-5; Kimmet Aff., ¶¶ 16-23. Instead, citing deposition testimony that does not support their claims, Plaintiffs casually suggest that independents petition in June or July. Pls.' Opp'n at 33. They ignore the fact that Montana has a flourishing initiative process with at least 120,000 petition signatures to verify in June and July, followed by challenges. State's Facts, ¶¶ 6, 24. Plaintiffs do not dispute this.

Instead, to fit Mr. Kelly's schedule, Plaintiffs would compromise the voting or initiative processes, or ask "the State" to hire more employees. Kimmet 30(b)(6) Dep. at 33:20-35:5; cf. Kimmet Aff., ¶ 6; Ex. C. These alternatives are not a matter of "administrative convenience" (Plaintiffs' term), but a proposed

mandate. Even if the staffing of county election offices were within the State's authority or at issue in this case (it is neither), the absence of legal authority for Plaintiffs' argument shows the Constitution does not dictate to Montana taxpayers such a sweeping reallocation of election resources.

## CONCLUSION

Plaintiffs have not genuinely disputed any fact material to the State's motion for summary judgment. For the foregoing reasons, and for the reasons given in the State's combined opening and response brief, the State respectfully requests the Court grant that motion.

Respectfully submitted this 5th day of June, 2009.

>STEVE BULLOCK
>Montana Attorney General
>215 North Sanders
>P.O. Box 201401
>Helena, MT 59620-1401
>
>By: */s/ Anthony Johnstone*
>    ANTHONY JOHNSTONE
>    Solicitor

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2009, an accurate copy of the foregoing Secretary of State's Reply Brief was served on the following persons by the following means:

 1, 2, 3      CM/ECF

       1     Clerk, U.S. District Court

       2     Mr. Bryan Sells
              Senior Staff Counsel
              Southern Regional ACLU
              230 Peachtree Street, N.W.
              Suite 1440
              Atlanta, GA 30303-1513

       3     Ms. Elizabeth L. Griffing
              American Civil Liberties Union of Montana Foundation, Inc.
              241 East Alter, Suite. B
              P.O. Box 9138
              Missoula, MT 59802-9138

DATED:  June 5, 2009            */s/ Anthony Johnstone*
                                           ANTHONY JOHNSTONE
                                           Assistant Attorney General
                                           215 North Sanders
                                           P.O. Box 201401
                                           Helena, MT 59620-1401

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 11 of the Montana Rules of Appellate Procedure, I certify that this principal brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 3,244 excluding the caption and certificates of service and compliance.

                                         */s/ Anthony Johnstone*
                                       ANTHONY JOHNSTONE