LAUGHLIN MCDONALD
American Civil Liberties Union Foundation, Inc.
230 Peachtree Street NW, Suite 1440
Atlanta, GA 30303
(404) 523-2721
lmcdonald@aclu.org

JON ELLINGSON
ACLU of Montana Foundation, Inc.
241 E. Alder, Ste. B
P.O. Box 9138
Missoula, MT 59802
(406) 830-3009
jeng@aclumontana.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | | |
|---|---|---|
| STEVE KELLY and CLARICE DREYER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. CV-08-25-BU-SEH |
| | ) | |
| LINDA McCULLOCH, in her official capacity as Secretary of State of the State of Montana, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiffs' Brief in Support of Resubmitted Motion for Costs and Attorney's Fees

I. Plaintiffs Are Prevailing Parties

Plaintiffs are prevailing parties within the meaning of the fee statutes, 42 U.S.C. §§ 1988 and 1973*l*(e), "'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"   Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[1]   Accord, Park, ex rel. Park v. Anaheim Union High School Dist., 464 F.3d 1025, 1035 (9th Cir. 2006) (a prevailing party is one who succeeded on "any significant issue" in the litigation).   The Hensley formulation, described by the Court as "generous," 461 U.S. at 433, is designed to effectuate the intent of Congress in enacting the fee statutes "to ensure 'effective access to the judicial process' for persons with civil rights grievances."   461 U.S. at 429.   See also Anderson v. Morris, 658 F.2d 246, 248 (4th Cir. 1981) ("attorneys' fees are an integral part of the remedies necessary to obtain compliance with the civil rights laws"); Doe v. Busbee, 684 F.2d 1375, 1379 (11th Cir. 1982) ("[t]he congressional purpose in authorizing awards of attorney's fees to plaintiffs as prevailing parties was to assist private attorneys general in vindicating civil rights"); Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 633 (6th Cir. 1979) (the purpose of the statute "is to make an award of fees which is 'adequate to attract competent counsel'") (quoting S.Rep. No. 94-1011, reprinted in

---

[1]Because §§ 1973l(3) and 1988 contain nearly identical language and serve the same congressional purposes, courts construe the sections similarly.   Hensley v. Eckerhart, 461 U.S. at 433 n.7.   Fees are appropriate here under both sections.

1976 USCCAN 5908).

In Texas State Teachers v. Garland Independent School District, 489 U.S. 782, 792 (1989), the Court affirmed its decision in Hensley and held that "to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."   Accord, Farrar v. Hobby, 506 U.S. 103, 111 (1992).   The Plaintiffs here succeeded on a significant issue in this litigation, i.e., the invalidation of the March deadline for filing independent candidate petitions, which achieved a benefit they sought in bringing suit and which changed the legal relationship between the parties.   Under the circumstances, Plaintiffs are prevailing parties entitled to a fee award.

II. No Special Circumstances Exist Which Would Render an Award Unjust

Where a party is prevailing, the discretion of the court in determining whether to award fees is narrowly limited.   The courts have adopted the standard in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1986), that a prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."   Accord, Hensley v. Eckerhart, 416 U.S. at 429; New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 68 (1980); Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989).   As the Court explained in Blanchard v.

Bergeron, 489 U.S. at 96, "Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large."   Accord, Corder v. Gates, 947 F.2d 374, 377 (9th Cir. 1991); Bonnes v. Long, 599 F.2d 1316, 1318 (4th Cir. 1979); Bills v. Hodges, 628 F.2d 844, 847 (4th Cir. 1980).   The special circumstances exception "should be narrowly construed" so as not to interfere with congressional purpose in enacting the fee statutes of encouraging civil rights enforcement, penalizing obstructive litigation by civil rights defendants, and deterring civil rights violations.   Martin v. Heckler, 773 F.2d 1145, 1150 (11th Cir. 1985).   Accord, Anderson v. Morris, 658 F.2d at 248; Jones v. Wilkinson, 800 F.2d 989, 991 (10th Cir. 1986); Navajo Nation v. Arizona Independent Redistricting Com'n, 286 F.Supp.2d 1087 (D. Ariz. 2003).   As the courts have repeatedly recognized, an award of attorney's fees "should comport with the underlying purpose of the Civil Rights Attorney's Fees Awards Act of 1976, which is to provide civil rights litigants effective access to the federal courts." Alexander S. By and Through Bowers v. Boyd, 929 F. Supp. 925, 932 (D.S.C. 1995).   Accord, Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1190-91 (11th Cir. 1983) (civil rights attorneys "should be fully compensated" in that they perform "a public service: vindicating fundamental constitutional rights"); Buffington v. Baltimore County, Md., 913 F.2d 113, 129 (4th Cir. 1990).

4

The burden is on those opposing fees to establish the existence of special circumstances which would render an award unjust.   A defendant "must make a 'strong showing' to justify denial of section 1988 fees to prevailing plaintiffs." Martin v. Heckler, 773 F.2d at 1150, quoting Riddell v. National Democratic Party, 624 F.2d 539, 543 (5th Cir. 1980).   Accord, J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1474 (10th Cir. 1985).   In applying the "strong showing" standard, courts have rejected defenses of special circumstances based on the fact that an award would "fall on the taxpayers," Johnson v. State of Mississippi, 606 F.2d 635, 637 (5th Cir. 1979), that defendants "were merely performing their duty by enforcing the statute controlling," id., Graves v. Barnes, 700 F.2d 220, 221 (5th Cir. 1983), that the law was uncertain, Northcross v. Board of Education of Memphis City Schools, 611 F.2d at 635, J & J Anderson, Inc. v. Town of Erie, 767 F.2d at 1474, or that a defendant acted in "good faith."   Hutto v. Finney, 437 U.S. 678, 693 (1978); Morse v. Republican Party of Virginia, 972 F.Supp. 355 (W.D. Va. 1977).   The courts have also rejected special circumstances defenses based on a plaintiff's ability to bring suit without a fee award, Bills v. Hodges, 628 F.2d at 847, Ellwest Stereo Theater, Inc. v. Jackson, 653 F.2d 954 (5th Cir. 1981), Jones v. Wilkinson, 800 F.2d at 991-92, a plaintiff's likelihood of success, Cooper v. Singer, 719 F.2d 1496 (10th Cir. 1983), or that litigants were under no obligation to pay

attorneys associated with a civil rights organization. <u>Bill v. Hodges</u>, 628 F.2d at 847.

 No circumstances exist in this case which would render an award unjust.

III. <u>Computation of the Fee Award</u>

The starting point for determining the appropriate amount of an award of attorney's fees is found by multiplying the number of hours reasonably expended on a case by the reasonable or customary hourly rate.   <u>Hensley v. Eckerhart</u>, 461 U.S. at 433.   This amount, known as "the lodestar," has "become the guiding light of our fee-shifting jurisprudence."   <u>Perdue v. Kenny A. et rel. Winn</u>, 130 S.Ct. 1662, 1672 (2010).   <u>See</u> <u>Yeagley v. Wells Fargo & Co.</u>, 365 Fed.Appx. 886 (9th Cir. 2010) (authorizing the lodestar method for calculating a reasonable attorney's fee); <u>Nadarajah v. Holder</u>, 569 F.3d 906, 910 (9th Cir. 2009) (applying the lodestar analysis); <u>McCown v. City of Fontana</u>, 550 F.3d 918, 922 (9th Cir. 2008) (same).

<u>Hensley</u> further held that the lodestar could be adjusted upward or downward in light of the "results obtained," as well as other factors identified in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), and which are customarily considered by the courts in awarding attorneys' fees.   <u>Hensley</u>, 461 U.S. at 434, n. 9.[2]   The <u>Johnson</u> factors were cited with approval by both the House

---

[2]The <u>Johnson</u> factors are: (1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the litigation; (5)

and Senate when § 1988 was enacted into law.   <u>Pennsylvania v. Delaware Valley</u>
<u>Citizens' Council for Clean Air</u>, 478 U.S. 546, 562 (1986) (citing H.R. Rep. No.
94-1558, p. 8 (1976); S.Rep. No. 94-1011, p. 6 (1976)).   The Court in <u>Hensley</u>
noted, however, that "many of these factors usually are subsumed within the initial
calculation of hours reasonably expended at a reasonable   hourly rate."   461 U.S. at
434, n. 9.

Following <u>Hensley</u>, the court in <u>Blum v. Stenson</u>, 465 U.S. 886, 895 & n.11
(1984), elaborated that most of the <u>Johnson</u> factors will ordinarily be reflected in the
lodestar itself, <u>i.e.</u>, time and rate, rather than in an adjustment of the lodestar.   For
example, the novelty and complexity of the issues, the special skill and experience of
counsel, the quality of representation, and the results obtained "are presumably fully
reflected in the lodestar amount, and thus cannot serve as independent bases for
increasing the basic fee award."   465 U.S. at 898-900.   <u>Accord</u>, <u>Pennsylvania v.</u>
<u>Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. at 565-66; <u>Jordan v.</u>
<u>Multnomah County</u>, 815 F.2d 1258, 1262-63 (9th Cir. 1987).   Although upward
adjustments of the lodestar are still permitted, they "are proper only in certain 'rare'

---

the customary fee for similar work; (6) the attorney's expectations at the outset of
litigation; (7) time limitations imposed by the client or circumstances; (8) the
amount in controversy and the results obtained; (9) experience, reputation
and ability of the attorney; (10) the undesirability of the case; (11) the nature and
length of the attorney-client relationship; and (12) fee awards in similar cases.

and 'exceptional' cases."   Blum v. Stenson, 465 U.S. at 898-901.   Plaintiffs in this

case do not seek an enhancement of the lodestar fee amount, but they do contend

that the Johnson factors amply support their requested hours and hourly rate.

A "'reasonable' fee is a fee that is sufficient to induce a capable attorney to

undertake the representation of a meritorious civil rights case."   Perdue v. Kenny A.

et rel. Winn, 130 S.Ct. at 1672.   The setting of a reasonable hourly rate should be

calculated according to "prevailing market rates."   Blum v. Stenson, 465 U.S. at

895.   It is irrelevant whether Plaintiffs' lawyers are private practitioners or work for

public interest organizations and do not charge a fee.   Fees are calculated for both in

the same manner.   Id. at 895 & n.11; Blanchard v. Bergeron, 489 U.S. at 95 ("That

a nonprofit legal services organization may contractually have agreed not to charge

any fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a

prevailing party in a § 1983 action, calculated in the usual way."); Bills v. Hodges,

628 F.2d at 847; Alexander S. By and Through Bowers v. Boyd, 929 F.Supp. at 933

(refusing to discount a fee because counsel participated on a pro bono basis);

Northcross v. Board of Education of Memphis City Schools, 611 F.2d at 638;

Oldham v. Ehrlich, 617 F.2d 163, 169 (8th Cir. 1980) ("a legal aid organization

merits an attorney fee fully as much as does the private attorney").

A. Hours Spent

8

Plaintiffs have filed detailed declarations with attachments listing the hours claimed, how the hours were spent, the rates sought, and the qualifications and experience of Plaintiffs' counsel.   Mr. McDonald seeks compensation for 108.15 hours, Mr. Sells for 367.25 hours, Mr. Sherman for 40.5 hours, and Ms. Griffing for 87.3 hours.   All the time claimed was legally and factually related and should be compensable.   In addition to the hours spent establishing a violation, Plaintiffs are also entitled to recover fees for time spent pursuing a fee claim.   Love v. Mayor of Cheyenne, 620 F.2d 235, 237 (10th Cir. 1980); Skinner v. Uphoff, 324 F.Supp.2d 1278, 1286-87 (D. Wyo. 2004) (time spent preparing a fee petition is recoverable); Kersh v. Board of County Commissioners of Natrona County, Wyoming, 851 F.Supp. 1541, 1543 (D. Wyo. 1994) (same); MacLaird v. Werger, 723 F.Supp. 617, 619 (D. Wyo. 1989) ("hours spent for work done in resolving the fee issue itself" are recoverable).

Plaintiffs were represented by more than one attorney, but it is not unreasonable for more than one lawyer to appear in a case and fees may not be denied or discounted merely on that basis.   Avalon Cinema Corp. v. Thompson, 689 F.2d 137 (8th Cir. 1982).   A party may recover for more than one attorney where the work is not unreasonably duplicative, as where more than one attorney does the same work.   Johnson v. University College of University of Alabama in

Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983).   An examination of the time

records of Plaintiffs' counsel in this case reflects the absence of unreasonable

duplication, and that Plaintiffs' lawyers were performing different tasks and had

primary representation of the Plaintiffs at different times.   The complexity of the

litigation clearly warranted the use of more than one attorney.

     B. Hourly Rates

     The rates requested in this case are: $450 an hour for Mr. McDonald, $350 an

hour for Mr. Sells, $250 an hour for Mr. Sherman, and $200 an hour for Ms.

Griffing.   These rates are consistent with rates awarded by the federal courts to

attorneys for comparable complex litigation.   For example, in 2005 Mr. McDonald

was awarded an hourly rate of $400 in Moultrie v. Charleston County, C.A. No.

2:01-00562-23 (D.S.C. August 8, 2005), a challenge to at-large elections in

Charleston County, South Carolina.   A copy of the order of the district court is

attached as Exhibit 2 to Mr. McDonald's declaration.   He was also awarded fees at

the rate of $400 an hour in Bone Shirt v. Hazeltine, 2006 WL 1788307 *3 (D. S.D.),

a voting rights case, and in Cottier v. City of Martin, 2008 WL 2696917 *5 (D.

S.D.), another voting rights case.   Mr. Sells requested rates of $350 an hour is

similarly within the range of hourly rates awarded to him in various federal courts or

pursuant to settlement agreements.   See attached declaration of Bryan Sells.

Although some of the hours spent by Plaintiffs' counsel were in 2008, 2009, and 2010, counsel are entitled to be awarded fees at their current rates.   As the Court held in Missouri v. Jenkins, 491 U.S. 274, 284 (1989): "An adjustment for delay in payment is, we hold, an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988."

The rates requested by Plaintiffs' attorneys are also similar to, or lower than, those charged by attorneys of comparable years of experience in the metropolitan Atlanta area.   The Fulton County, Georgia, Daily Report did a survey in 2010 of hourly rates charged by attorneys in the Atlanta area by examining Chapter 11 bankruptcy filings in Georgia's three district bankruptcy courts, as well as other courts where it concluded it could find local rates.   See Daily Report, "$900 lawyers aren't just a New York thing," March 8, 2010, a copy of which is attached as Exhibit 3 to Mr. McDonald's declaration.   The survey showed that the average rate billed by partners was $476 an hour, while the highest partner billing rate was $900 an hour.   The average rate charged by local associates was $302 an hour, while the highest associate billing rate was $655 an hour.   The rates sought by Plaintiffs' attorneys in this case are thus comparable to, or lower than, those of other lawyers in the Atlanta area and demonstrate that Plaintiff's rates are reasonable.   As the court held in Martin v. University of South Alabama, 911 F.2d 604, 610 (11th

Cir. 1990), "[c]ommon sense dictates that the 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee."

Plaintiffs contend that their out-of-town attorneys are entitled to their out-of-town rates rather than those applicable in the State of Montana.   In Kersh v. Board of County Commissioners of Natrona County, Wyoming, 851 F.Supp. at 1544, in awarding out-of-town rates to plaintiffs' attorney, the Court identified the following standards for determining if an award based upon out-of-town rates was warranted: "whether (1) the case required a specialized expertise not found in the local market: (2) the case required or could have required significant financial resources; (3) the case raised unpopular issues; and (4) it was reasonable for the clients to look to out-of-town counsel because attorneys in the community have not filed, and have shown no interest in filing, such litigation."   These factors support out-of-town rates for Plaintiffs' out-of-town attorneys in the present case.

First, Plaintiffs and their counsel are unaware that any ballot access case has ever been filed by local counsel on behalf of independent candidates in Montana. This is evidence that a special expertise is required for such litigation not found in the local market.   In addition, as appears from the declarations of Plaintiffs' out-of-town attorneys, Mr. McDonald has been employed by the ACLU Voting Rights Project since 1972, Mr. Sells from 2000-November 2010, and Mr. Sherman

since January 2011, and have litigated scores of voting rights cases.   Plaintiffs

out-of-town counsel possess a specialized expertise in voting rights cases not found

in the local market.

      That voting rights litigation is highly specialized is further evident from the

fact that the federal courts have rated voting cases among the most complex tried by

federal courts.   According to a district court time study conducted by the Federal

Judicial Center measuring the complexity and time needed to handle matters by the

district courts, voting rights cases were among the top five most complex cases and

were given a weight of 3.86 compared to 1.0 for an "average" case.   Federal;

Judicial Center, 2003-2004 District Court Case-Weighting Study, Table 1, p. 5

(2005).   The only cases given a higher weight were Civil RICO, Patent,

Environmental Matters, and Death Penalty Habeas Corpus.

      Voting rights litigation is not only specialized and complex, but is expensive.

In this case, Plaintiffs were required to hire and use three   expert witnesses, C. B.

Pearson, Steve Cole, and Todd Donovan .   The cost of the experts alone was

$8,392.50.   The total litigation costs were $20,321.80.

      Plaintiff Kelly, in his declaration filed in support of Plaintiffs' motion for

costs and fees, says the Plaintiffs did not have the financial resources to hire counsel

to represent them in this case.   They were also not aware of any local or in-state

attorneys in Montana who had special expertise in ballot access cases.   They

requested representation from the ACLU because they were aware that it had special

expertise in voting rights cases and had represented independent candidates for

public office in other ballot access cases.

   Under the circumstances, the Plaintiffs' choice of out-of-town counsel was

reasonable and counsel's out-of-town hourly rates should be applicable.   In <u>Brooks</u>

<u>v. Georgia State Board of Elections</u>, 997 F.2d 857, 869 (11th Cir. 1993), the court

awarded out-of-town rates based upon affidavit evidence that there were no local

"attorneys familiar with voting rights actions who could have handled this case."

The court further noted, citing <u>Johnson v. University College</u>, 706 F.2d 1205, 1208

(11th Cir. 1983), <u>cert. denied</u>, 464 U.S. 994 (1983), that "civil rights litigants need

not select the nearest and cheapest attorneys."   997 F.2d at 869.   For other cases

noting the appropriateness of out-of town rates, <u>see</u> <u>Chrapliwy v. Uniroyal, Inc.</u>, 670

F.2d 760, 768 (7th Cir. 1981) ("the court erred as a matter of law in limiting the

hourly rates to local rates"); <u>Maceira v. Pagan</u>, 698 F.2d 38, 40 (1st Cir. 1983)

(out-of-town rates were appropriate where lawyers of similar expertise and

specialization were not available in the local community); <u>Polk v. NYS Dept. of</u>

<u>Corr. Services</u>, 722 F.2d 23, 25 (2d Cir. 1983) (out-of-town rates are appropriate

where "special expertise of counsel from a distant district is required"); <u>Rodriguez v.</u>

<u>Secretary of Department of Health and Human Services</u>, 2009 WL 2568468 *10 (Fed. Cl., 2009) (out-of-town rates are appropriate when the attorney possesses special expertise or the plaintiff was unable to find local representation); <u>Dunn v. The Florida Bar</u>, 726 F.Supp. 1261, 1279-80 (M.D. Fla. 1988), <u>aff'd</u>. 889 F.2d 1010 (11th Cir. 1989) (awarding Washington, D.C. rates in Florida civil rights case where out-of-town counsel provided specialized assistance); <u>American Booksellers Ass'n, Inc. v. Hudnut</u>, 650 F.Supp. 324, 328 (S.D. Ind. 1986) (awarding out-of-town rates to counsel with special expertise); and <u>Riddell v. National Democratic Party</u>, 545 F.Supp. 252, 256 (S.D. Miss. 1982) (where special expertise in unavailable locally, the proper fee rate is that prevailing in the out-of-town lawyer's community). Plaintiffs' choice of out-of-town counsel in this case was reasonable, as are out-of-town counsel's hourly rates.

      C. <u>The Skill Required to Perform the Legal Services</u>

      The third <u>Johnson</u> factor requires a court to consider the skill required to properly perform the legal services rendered.   In deciding this issue, "the court must determine whether the case presented plaintiffs' counsel with novel or complicated issues."   <u>Alexander S. By and Through Bowers v. Boyd</u>, 929 F. Supp. at 936.   As noted above, voting rights cases are among the most difficult cases to come before the federal courts.   As the court concluded in <u>Williams v. Board of Comm'rs of</u>

McIntosh County, 938 F.Supp. 852, 858 (S.D. Ga. 1996): "Voting Rights litigation is, in and of itself, an extremely complex and intimidating area of the law." Accordingly, voting rights attorneys "should be compensated commensurate with the difficult nature of the case."   Id.   The issues in this case were complex, and the case required a high degree of skill.   The third Johnson factor strongly supports Plaintiffs' attorneys'   hours and rates.

D. The Results Obtained

The eighth Johnson factor requires a court to consider the results obtained by the litigation.   Undeniably, Plaintiffs were successful on their claim that Montana's March filing deadline for independent candidates was unconstitutional.   While they did not prevail on their claims involving the filing fee and signature requirement, that does not provide a basis for reducing their recoverable hours.   As the Court held in Hensley:

> Many civil rights cases will present only a single claim.   In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related theories.   Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.   Such a lawsuit cannot be viewed as a series of discrete claims.   Instead the district court should focus on the significance of the overall relief obtained by the plaintiffs in relation to the hours reasonably expended on the litigation.

461 U.S. at 435.   See McCown v. City of Fontana, 550 F.3d at 923 ("the district

court did not abuse its discretion when it treated all the claims, successful and unsuccessful, as arising out of a common core of facts").   Plaintiffs achieved significant relief, which supports the hours and rates they seek.

      E. <u>The Undesirability of the Case</u>

      The tenth <u>Johnson</u> factor requires a court to determine the undesirability of the case.   The Plaintiffs in this case were respected members of their community, and there was nothing undesirable about representing them.   However, the case raised complex issues, was time consuming, and was expensive to litigate.   The resources available to the Defendants, and the purely contingent nature of a fee award, made this an undesirable case.   This factor supports the hours and rates sought by Plaintiffs.

      F. <u>The Ability to Pay</u>

      Any fee award would be paid by Defendants.   Accordingly, the ability of any party to pay an award is not an issue in this case.

IV. <u>Paralegal Hours</u>

      Plaintiffs are entitled to recover the reasonable fee work of paralegals.   In <u>Missouri v. Jenkins</u>, 491 U.S. at 285, 288 n.10, the Court held that prevailing parties in civil rights cases can recover fees for the work of paralegals, which included "factual investigation, including locating and interviewing witnesses, assistance with

depositions, interrogatories and document production, compilation of statistical and financial data, checking legal citations, and drafting correspondence."   Accord, Easter House v. State of Ill. Dept. of Children and Family Servs., 663 F. Supp. 456, 460 (N.D. Ill. 1987) (allowing recovery of fees for paralegal work in "projects requiring an understanding of the case, such as organizing and compiling exhibits"); Roberson v. Brassell, 29 F. Supp. 2d 346, 353 (S.D. Tex. 1998) (allowing recovery for time spent by paralegal preparing exhibits, compiling witness notebooks, and conducting research); Webster Greenthumb Co. v. Fulton County, 112 F. Supp. 2d 1339, 1367 (N.D. Ga. 2000) (allowing recovery of time spent by a paralegal working on document production tasks); Hansen v. Deercreek Plaza, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) (allowing recovery of time spent by a paralegal "telephoning opposing counsel, conferencing with expert witnesses, attending onsite inspection, [and] drafting cover letters and email"); Northcross v. Board of Education of the Memphis City Schools, 611 F.2d at 639 (paralegal expenses are recoverable).   See also, Coalition to Preserve Houston v. Interim Bd. Of Trustees, 494 F. Supp. 738 (S.D. Tex. 1980) (awarding fees for the work of a paralegal under the Voting Rights Act); Williams v. Bd. of Comm'rs of McIntosh County, 938 F. Supp. 852 (S.D. Ga. 1996) (same).   Courts have also allowed recovery of fees for time spent by paralegals attending hearings,

18

trials, and depositions. See Morgan v. District of Columbia, 824 F.2d 1049, 1067 (D.C. Cir. 1987) (allowing recovery of fees for time spent by a paralegal taking notes at trial); Sulkowska v. City of New York, 170 F. Supp. 2d 359, 368 (S.D.N.Y. 2001) (allowing fees for paralegals attending trials, hearings, and depositions when the paralegal is "an integral part of the trial team"); Webster Greenthumb Co., 112 F. Supp. 2d at 1367 (allowing recovery of fees for time spent at trial by a paralegal who played an "integral role assisting counsel in the presentation of its case").

As appears from her statement of hours attached as Exhibit 4 to Mr. McDonald's declaration, paralegal Katie O'Connor, who graduated from law school and was admitted to the bar in 2010, spent 40.75 hours on this case drafting responses to discovery, communicating with Plaintiffs and witnesses, compiling exhibits, and communicating with expert witnesses.   That time had a legitimate purpose and involved tasks that would otherwise have been done by the attorneys and should be compensable under the attorney's fee statutes.

The hourly rate of $85 sought for Ms. O'Connor should also be compensable. Ms. O'Connor was awarded the paralegal rate of $75 an hour in Cottier v. City of Martin, 2008 WL 2696917 * 5.   However, according to a 2009 report of the Fulton County Daily Report, attached as Exhibit 5 to Mr. McDonald's declaration, the rate

for paralegals in the Atlanta area ranged from $85 to $215 an hour. "More bankruptcies, more hourly rates," March 16, 2009. The hourly paralegal rates being sought are consistent with, or lower than, the average rates in the Atlanta area.

V. Expenses

Plaintiffs are entitled to recover their reasonable expert fees and other costs pursuant to 42 U.S.C. § 1973l(e).   The statute was amended in 2006 expressly to provide for the recovery of "reasonable expert fees, and other reasonable litigation expenses as part of the costs."   Id.   In addition to expert witness fees, Plaintiffs seek to recover other costs under the fee statutes as well as 28 U.S.C. § 1821 (authorizing per diem and mileage for witnesses) and § 1920 (authorizing recovery of court fees, transcripts, and witness fees), in the total amount of $20,321. These expenses are detailed in Exhibit 6 to Mr. McDonald's declaration.   Of this amount, $4,769.45 is included in plaintiffs' Bill of Costs.   All the expenses were necessarily and reasonably incurred in the course of providing representation to the Plaintiffs, and are recoverable as part of an award of attorney's fees.   As the court held in Dowdell v. City of Apopka, Florida, 698 F.2d at 1192, with the exception of "routine overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."   Accord, Harris

20

v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (out-of-pocket expenses that would

normally be charged to a fee paying client are recoverable); Brooks v. Georgia State

Board of Elections, 997 F.2d at 861 n.3 ("[t]he fee statutes provide for the

reimbursement of reasonable costs incurred as well as the award of attorney's fees");

Daly v. Hill, 790 F.2d 1071, 1083-84 (4th Cir. 1986) (reasonable attorneys fees

"must include reasonable expenses"); Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir.

1983) ("[i]tems that are normally itemized and billed in addition to the hourly rate

should be included in fee allowances in civil rights cases if reasonable in amount");

Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000) (same); Pinkham v. Camex,

Inc., 84 F.3d 292, 294-95 (8th Cir. 1996) ("reasonable out-of-pocket expenses of the

kind normally charged to clients by attorneys should have been included as part of

the reasonable attorney's fees awarded").   Items such as photocopying charges, fees

of process servers, fax and telephone costs, travel, telephone, postage, and secretarial

costs have been expressly held to be compensable under the fee shifting statutes.

Missouri v. Jenkins, 491 U.S. at 289; Pinkham v. Camex, Inc., 84 F.3d 292, 294-95

(8th Cir. 1996) (long distance, fax, message and express mail charges were reasonable

out-of-pocket expenses of kind normally charged to clients by attorneys, and thus

should have been included as part of reasonable attorney fee award to prevailing

party); Trimper v. City of Norfolk, 58 F.3d 68, 75 (4th Cir. 1995) (compensable

litigation expenses include "secretarial costs, copying, telephone costs, and necessary travel"); Dowdell v. City of Apopka, Fla., 698 F.2d at 1192 ("[t]ravel, telephone, and postage . . . have been awarded in the decisions of the courts of this circuit"); Cullens v. Georgia Dept. of Transportation, 29 F.3d 1489, 1494 (11th Cir. 1994) (same); Northcross v. Board of Education of the Memphis City Schools, 611 F.2d 624, 639 (6th Cir. 1979) ("docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps" are recoverable); Freier v. Freier, 985 F. Supp. 710, 712-14 (E.D. Mich. 1997) (allowing recovery of filing fee and transportation, copies, faxes, and phone costs); Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997) (allowing recovery of the costs of "items such as photocopying, mileage, meals, and postage").

Conclusion

Plaintiffs are entitled to recover their costs and to be fully compensated for the time their attorneys spent in this litigation.

Respectfully submitted,

S/Laughlin McDonald

_____

LAUGHLIN McDONALD
American Civil Liberties
Union Foundation, Inc.
230 Peachtree Street, NW
Suite 1440
Atlanta, GA 30303

22

(404) 523-2721
FAX: (404) 653-0331

JON ELLINGSON
ACLU of Montana Foundation, Inc.
241 E. Alder, Ste. B
P.O. Box 9138
Missoula, MT 59802
(406) 830-3009
jeng@aclumontana.org

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2012, a true and correct copy of the

foregoing Plaintiff's Motion for Costs and Attorney's Fees, Plaintiffs' Brief in

Support of Motion for Costs and Attorney's Fees, Declaration of Laughlin

McDonald with attachments, Declaration of Bryan Sells with attachments,

Declaration of Jon Sherman with attachments, and Declaration of Elizabeth Griffing

with attachments were electronically served on the following by CM/ECF:

        1.     Clerk, U.S. District Court

        2.     STEVE BULLOCK
                 Montana Attorney General
                 JENNIFER ANDERS
                 215 North Sanders
                 P.O. Box 201401
                 Helena, MT 59624-1401
                 Telephone: (406) 444-2026
                 Fax: (406) 444-3549

                 /s/ Laughlin McDonald
                 LAUGHLIN McDONALD
                 Attorney for the Plaintiffs

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2) and 10.1. I certify that this brief is printed

with a proportionately spaced Times New Roman text typeface of 14 points; is

double spaced except for footnotes and for quoted and indented material; that the

word count calculated by Microsoft Word for Windows is 5,027 words, excluding

the certificate of service and certificate of compliance.

                                    /s/ Laughlin McDonald
                                    LAUGHLIN McDONALD
                                    Attorney for the Plaintiffs